84 So.2d 867 (1956)
Felix Edwin BORDELON, Plaintiff-Appellant,
v.
Edna BROWN, et al., Defendant-Appellee.
No. 8398.
Court of Appeal of Louisiana, Second Circuit.
January 9, 1956.
*868 Earl Edwards, Marksville, for appellant.
Maxwell J. Bordelon, Marksville, for appellee.
GLADNEY, Judge.
This action was instituted by Felix Edwin Bordelon on January 26, 1955, to be decreed the lawful owner of and entitled to the possession of a joint savings account deposit created by plaintiff and Edna Brown in the Moreauville State Bank. Made defendant besides Edna Brown was the bank which answered by admitting the deposit and paying into the registry of the court the sum of $1,000 plus accrued interest of $12.50, or a total of $1,012.50, under authority of the concursus statute, LSA-R.S. 13:4811 et seq. With the payment of said amount, the defendant bank was relieved of further responsibility and is no longer an active litigant in the case.
Edna Brown filed an answer in which she set forth the circumstances which brought about the joint deposit and asserted that as a consequence of the death of Felix Edwin Bordelon she was entitled to be decreed the owner and receive possession of the money in the bank under the contract which existed between her and Felix Edwin Bordelon.
Shortly after filing the suit plaintiff died intestate and his children have been substituted as plaintiffs.
After trial on the merits, judgment was rendered in favor of Edna Brown and plaintiffs have appealed.
The salient facts as related by Edna Brown are not seriously disputed. The transaction which gives rise to this litigation arose from a business relationship between Felix Edwin Bordelon and Edna Brown during November of 1952, at which time Edna Brown was engaged as a housekeeper and care-taker in the home of Bordelon, an elderly invalid. Her duties required her to also take care of two other invalid adults. As remuneration for these services Edna Brown received a salary of $60 per month until November 17, 1953, when the salary was reduced to $40 per month and at that time the aforementioned sum of $1,000 was deposited in the bank. The employment continued on the reduced monthly salary until December of 1954, at which time Edna Brown became ill and her sickness required hospitalization which temporarily prevented her from performing her customary duties at the Bordelon home. There is no evidence to indicate that prior to the institution of this suit that either Bordelon or Mrs. Brown intended to dissolve the business relationship. The existence of the deposit was evidenced by a bank book, the possession of which, according to the terms of the deposit, was necessary to accomplish withdrawal thereof. The deposit was made subject to the following endorsement which was written in the bank book by the hand of Louis B. Coco, assistant cashier of the bank, upon the joint direction of Felix Edwin Bordelon and Edna Brown:
"Must be signed by both parties. In case of death survival has complete amount."
In the assigned reasons for judgment the District Judge concluded that Edna Brown was entitled to the deposit on either of two grounds: (1) that the deposit constituted a remunerative donation and as such was not subject to formalities otherwise required of donations inter vivos; and (2) that Edna Brown had a proprietary interest in the deposit by reason of the agreement with Bordelon that the reduction of her salary would be supplemented by the deposit jointly executed by them on November 17, 1953, should Bordelon die first.
Appellant contends the District Court erred in not applying the principles pronounced in Vercher v. Roy, 1930, 171 La. 524, 131 So. 658, and Northcott v. Livingood, La.App.1942, 10 So.2d 401, in which *869 decisions it was held that an attempted donation inter vivos of a credit in a bank could only be legally recognized when evidenced by an act passed before the notary and two witnesses as prescribed by the LSA-Civil Code Article 1536. It is argued further that since such formality was not complied with the attempted gift of the deposit never became perfect and consequently Edna Brown has no right thereto. On the other hand, appellees earnestly assert the transaction creating the deposit was in the nature of a remunerative donation, and, therefore, not subject to the rules peculiar to donations inter vivos.
Any transaction which involves the gratuitous acquisition or disposition of property must be made in the forms established by the provisions of the LSA-Civil Code relating to donation inter vivos, and mortis causa. A donation inter vivos is therein defined as an act by which the donor divests himself presently and irrevocably of the thing given in favor of the donee who accepts it. The donation mortis causa is an act by which a donor disposes of property designed to take effect when he shall no longer exist and which is revocable. LSA-Civil Code arts. 1467, 1468 and 1469. It is clear from the tenor of the notation in the bank book upon which Edna Brown's rights depend, that the said agreement cannot be classified as a donation mortis causa for it complies with none of the formalities required for the validity of a testament.
We will, therefore, more particularly inquire as to whether Edna Brown's rights are dependent upon formalities required with respect to certain donations inter vivos. The following LSA-Civil Code articles are pertinent to the inquiry:
No. 1523:
"There are three kinds of donations inter vivos:
"The donation purely gratuitous, or that which is made without condition and merely from liberality;
"The onerous donation, or that which is burdened with charges imposed on the donee;
"The remunerative donation, or that the object of which is to recompense for services rendered."
No. 1525:
"The remunerative donation is not a real donation, if the value of the services to be recompensed thereby being appreciated in money, should be little inferior to that of the gift."
No. 1526:
"In consequence, the rules peculiar to donations inter vivos do not apply to onerous and remunerative donations, except when the value of the object given exceeds by one-half that of the charges or of the services."
No. 1536:
"An act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things, such as rents, credits, rights or actions, under the penalty of nullity."
No. 1538:
"A donation inter vivos, even of movable effects, will not be valid, unless an act be passed of the same, as is before prescribed.
"Such an act ought to contain a detailed estimate of the effects given."
No. 1539:
"The manual gift, that is, the giving of corporeal movable effects, accompanied by a real delivery, is not subject to any formality."
The Code declares by way of definition that corporeal things are such as are made manifest to the senses, which we may touch or take, which have a body, whether animate or inanimate, and incorporeal things are such as are not manifest to the senses, and which are conceived only by the understanding. Things are also classified as being movable by the disposition of law such as obligations and actions. All things corporeal and incorporeal, other *870 than those which have the character of immovable by nature or disposition of the law, are considered as movables. LSA-Civil Code articles 460, 474 and 475. The transferring of movable effects into the power and possession of another takes place either by their real tradition as to corporeal things or by the delivery of the title and the act of transfer in the tradition of incorporeal rights. LSA-Civil Code articles 2478, 2481.
The agreement entered into between Bordelon and Mrs. Brown indicates quite plainly, we think, the intent on the part of both parties that upon the death of the one, the deposit should belong to and possession thereof belong to the survivor. Yet, since there was no delivery actually of the cash, the possession of the right to withdraw the deposit was the exclusive right of neither party. The evidence indicates that Bordelon actually delivered to Mrs. Brown the bank book and she retained it in her possession until the trial of this case. While it can be said to be true that the bank book was a corporeal thing and therefore, a transfer of the book constituted a manual donation in accordance with the provisions of Article 1539, the mere possession of the book by Mrs. Brown did not transfer the obligation which it represented. The obligation constituted an incorporeal thing which could only be validly transferred in accordance with the provisions of Article 1536. An exception to said codal article must be recognized, however, if the transaction should be determined to be a remunerative donation and therefore, not subject to the conditions imposed by LSA-Civil Code Article 1536.
In support of appellees' contention that defendant is entitled to receive the deposit as remuneration for her services and, therefore, beyond the purview of the provisions of LSA-Civil Code Article 1536, counsel points out that as a consideration for the creation of the deposit, Edna Brown agreed the amount of her remuneration would be and actually was reduced by $20 per month. This argument is supported by undisputed evidence but the record does not show plaintiff's services at any time merited a greater remuneration than $60 per month. As a consequence it is evident the loss by defendant because of the reduction was approximately $280 calculated at $20 per month for the period from November 17, 1953, until the death of plaintiff in January, 1955. We must conclude, therefore, that any unremunerated services by the defendant did not equal or exceed one-half of the amount on deposit, and accordingly, under LSA-Civil Code Article 1526 it has not been established the subject transaction may be classified as a remunerative donation. See Almond v. Adams, 1952, 221 La. 234, 59 So.2d 132.
Appellant has cited two decisions which, in our opinion, are apposite under the facts as resolved herein. In Vercher v. Roy, supra, there was involved a certificate of time deposit under which Mrs. Roy, the defendant, claimed entitlement to the deposit but was opposed by the administrator of the succession. The court held that the attempted transfer was invalid for failure to conform to the provisions of Article 1536 of the LSA-Civil Code, the court saying [171 La. 524, 131 So. 660]:
"The fact that the certificate was made payable to the depositor, and, in the event of his death, to Mrs. Roy, does not entitle the latter to the certificate or its proceeds, on the happening of that event. To hold otherwise would be to give to the clause in favor of Mrs. Roy the effect of a donation mortis causa, when such donations can be made only by last will and testament. Civil Code, arts. 1750 and 1469; Barriere v. Gladding's Curator, 17 La. 144. On the other hand, if the clause be viewed as an attempt to pay, after the death of the deceased, any obligation due Mrs. Roy, it is ineffective, for such obligation, at that time, must be established contradictorily with the succession, and paid, if it exists, by the succession."
In Northcott v. Livingood, supra, the court gave consideration, inter alia, to whether or not the defendant had a proprietary *871 interest in a joint account and denied her claims in that respect. In the instant suit the evidence shows conclusively that Mrs. Brown made no deposit whatsoever in the joint account and, therefore, is without right to claim a proprietary interest therein. In the Northcott case [10 So.2d 405], the court said:
"It is almost equally as clear that defendant has no right to any of said deposits under title of gift or donation inter vivos, because it is indispensable to the transfer of title to a credit by gift or donation that the instrument intending to accomplish such result be in notarial form. Civil Code, Article 1536. A credit in bank is not a corporeal movable and for this reason its transfer to another may not be effected by manual gift. Civil Code, Article 1539."
We consider the foregoing authorities sufficient to show that the attempted transfer of the deposit by Bordelon was entirely without validity since in order to clearly establish such a donation wherein delivery of possession was to take place upon his death, neither the essential requirements to perfect a donation inter vivos nor mortis causa have been met. In fact, the transaction never culminated into an actual donation because there was no tradition of delivery.
The conclusion which we have herein reached requires that the judgment from which appealed should be reversed and set aside and rendered in favor of plaintiff. We think, however, that any rights which Edna Brown may have for the recovery of compensation for her services against plaintiff should not be prejudiced by this decision, and accordingly, in our decree such rights will be reserved. It is ordered that there be judgment in favor of plaintiffs: Lee Felix Bordelon, Jules P. Bordelon, Daniel Bordelon, Verdie Bordelon, Mrs. Edw. Poret, Jr., Anna Bordelon, and Felix Edwin Bordelon, Jr., and against Edna Brown, and the Moreauville State Bank, decreeing plaintiffs to be the true and lawful owners of the sum of $1,012.50, as deposited in the registry of the Court, and that G. H. Couvillion, clerk of the said Twelfth Judicial District Court, Parish of Avoyelles, State of Louisiana, be and he is hereby authorized to deliver the said amount to plaintiffs, subject to the provisions of LSA-R.S. 13:4816, relating to the disbursement of costs.
It is further ordered that any rights which Edna Brown may have to claim remuneration for services rendered Felix Edwin Bordelon, deceased, be and the same are hereby reserved.
All costs, including costs of this appeal, should be taxed upon Edna Brown.